UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THERESA MATCZAK, | No. 1:21-cv-20415 |
| Plaintiffs, | |
| v. | **OPINION** |
| COMPASS GROUP USA, INC., | |
| Defendant. | |

**APPEARANCES**:

Franklin Rooks
MORGAN ROOKS, P.C.
525 Route 73 North, Suite 104
Marlton, NJ 0805

   *On behalf of Plaintiff.*

Bridget Devlin
Rachel Fendell Satinsky
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102

   *On behalf of Defendant.*

**O'HEARN, District Judge.**

## INTRODUCTION

This matter comes before the Court by Defendant, Compass Group USA, Inc.'s Motion to Dismiss and Compel Arbitration ("Motion"). (ECF No. 7). The Court did not hear argument pursuant to Local Rule 78.1. For the reasons stated herein, the Motion is **GRANTED**.

   **I.**   **PROCEDRUAL HISTORY**

On November 5, 2021, Plaintiff, Theresa Matczak ("Plaintiff") filed suit in the New Jersey

Superior Court, Salem County and, thereafter, on December 8, 2021, Defendant, Compass Group USA, Inc. ("Defendant") removed this matter to this Court under 28 U.S.C. §§ 1331, 1332, 1367(a), 1441, and 1446. (Notice of Removal, ECF No. 1). On January 10, 2022, Defendant filed the present Motion.

## II.     FACTUAL BACKGROUND

Plaintiff began employment with the Defendant as a supervisor/cook on August 1, 2018. (Compl., ECF No. 1, ¶¶ 9–10). Plaintiff sustained an injury in the scope of her employment and sought workers compensation benefits. (*Id.*, ¶¶ 11–14). Plaintiff underwent surgery and took a leave of absence under the Family and Medical Leave Act ("FMLA") for approximately four weeks in 2020 and thereafter returned to work without restrictions. (*Id.*, ¶¶ 15–19). After experiencing continued symptoms, Plaintiff required a second surgery, took a second FMLA leave in 2021 and again returned to work. (*Id.*, ¶¶ 20–25). Plaintiff alleges that upon her return to work from her second FMLA leave she was terminated due to "lack of work." (*Id.*, ¶¶ 25–27).

Plaintiff responded by bringing this suit, raising claims of failure to reinstate her to employment and retaliation under the FMLA, 29 U.S.C. § 2601 *et seq.* (Counts I and II) and disability discrimination under the New Jersey Law Against Discrimination, N.J. STAT. ANN. § 10:5-1 *et seq.* ("NJLAD") (Count III). (ECF No. 1).

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, strongly favors the enforcement of arbitration agreements. *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020). The Third Circuit has adopted a two-tiered framework for assessing motions to compel arbitration. *See Kirleis v. Dickie, McCarney & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). Under that framework, a court must ensure that: (1) a valid agreement to arbitrate exists, and (2) the dispute

falls within the agreement's scope. *Id*. In some cases, a court must consider whether the parties agreed to arbitrate under the traditional Rule 12(b)(6) standard without discovery, but in others, it must use the Rule 56 standard after some discovery. To determine which standard is appropriate, the Third Circuit has articulated the following framework:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (citations and quotations omitted). The Third Circuit recently reiterated that "[t]he centerpiece of that framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents." *Singh v. Uber Techs., Inc.,* 939 F.3d 210, 218 (3d Cir. 2019) (citing *Guidotti*, 716 F.3d at 774–76).

Here, neither party cites nor even addresses the applicable standard or framework for analyzing the present Motion. Thus, the Court is left to do so. First, the Complaint plainly does not mention or rely upon the arbitration agreement. This leaves the Court looking to the documents extraneous to the pleadings and the respective declarations submitted by both parties to determine whether the parties have agreed to arbitrate this dispute. Thus, pursuant to *Guidotti*, it would be inappropriate for the Court to apply a Rule 12(b)(6) standard to Defendant's Motion in this case. *See Ackies v. Scopely, Inc.,* No. 19-19247, 2020 WL 5757988, at *3–4 (D.N.J. Sept. 28, 2020); *Hubbard v. Comcast Corp.*, No. 18-16090, 2019 WL 2866067, at *2 (D.N.J. July 3, 2019); *Kennedy v. LVNV Funding LLC*, 18-10695, 2019 WL 1789477, at *3 (D.N.J. Apr. 24, 2019);

*Dotson v. Atlantic Credit & Finance, Inc.*, No. 19-01143, 2019 WL 5394837, at *1–2 (D.N.J. Oct. 22, 2019); *Tailor v. Midland Funding, LLC*, No. 18-11320, 2019 WL 943520, at *1 (D.N.J. Feb. 22, 2019).

Under Rule 56, a moving party is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id*. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify

specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250–51.

IV. **DISCUSSION**

A. **The Facts Related to the Execution of the Arbitration Agreement**

In support of its Motion, Defendant submits the Amended Declaration of Demetra Bell, Defendant's Director of Technology Solutions. (ECF No. 9-1). Ms. Bell details the process of the online portal, "PeopleHub," through which employees such as Plaintiff complete required documents related to their employment. (ECF No. 9-1, ¶¶ 5–8). The process was described as follows:

- Employees log onto the portal using unique credits with a username and password;
- When a new employee logs on to the portal, they are presented with a list of tasks to be completed including reviewing and acknowledging receipt of various policies and forms;
- The employee is asked to carefully read each document and there is no time limitation to do so;
- Employees can complete the documents in more than one single sitting and can log on and/or off to complete the documents at a later time;
- Each employee is asked to acknowledge agreement with the document by clicking a "sign" icon and once that is done, the document is generated with the employee's name on the signature line noting "digitally signed by" on the specific date.

(*Id.*). Ms. Bell stated that the Plaintiff "electronically signed, completed and acknowledged the Arbitration Agreement" in the ordinary course of business as described above. (ECF No. 9-1, ¶ 10).

5

The Arbitration Agreement is a single page and indicates it was digitally signed by Plaintiff on August 1, 2018. (Exh. A, ECF No. 9-1).

Plaintiff submitted a Declaration in opposition to Defendant's Motion. (ECF No. 8-2). Plaintiff admits that her first day of work was August 1, 2018, the date the Arbitration Agreement was noted to be executed. (ECF No. 8-2, ¶ 4). Plaintiff admits that on her first day of work she was advised that she was required to digitally sign a number of documents related to her employment. (*Id.*, ¶ 7). Plaintiff admits that one of the documents she was required to sign was, in fact, the Arbitration Agreement. (*Id.*, ¶ 9). Plaintiff admits that she was instructed to "click" on the respective signature lines of the documents. (*Id.*, ¶ 13). Thus, there is no factual dispute that Plaintiff executed the Arbitration Agreement. Accordingly, no further discovery on this question is required.

Plaintiff contends, however, that she was not given advance notice of the documents she would be required to sign or an opportunity to review them prior to her first day of employment, (*id.*, ¶¶ 10, 16); that she did not receive any explanation, contemporaneously or otherwise, as to the documents she would be required to sign, (*id.*, ¶ 11); that she was instructed to "sign the documents right away before [she] could begin . . . orientation" (*id.*, ¶ 14); that "Defendant did not allow [her] to review and sign the documents at a later date," (*id.*, ¶ 15); and that she was not advised that she had the right to refuse to sign the Arbitration Agreement, was not asked if she had any questions about the Arbitration, and never received further information as to the Arbitration Agreement, (*id.*, ¶¶ 17–21). Finally, Plaintiff claims "I did not understand the terms of the Arbitration Agreement that I signed . . . ." (*Id.*, ¶ 22). However, Plaintiff's assertions directly contradict the Arbitration Agreement she signed which states in relevant part, directly above her signature,

6

> **MY SIGNATURE BELOW ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS. I ACKNOWLEDGE THAT I HAVE ALSO RECEIVED A SIGNED COPY OF THIS AGREEMENT FOR MY RECORDS. I FURTHER UNDERSTAND THAT THIS AGREEMENT REQUIRES ME TO ARBITRATE ANY AND ALL DISPUTES THAT ARISE OUT OF MY EMPLOYMENT. DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE AGREEMENT.**

As such, the Court affords no weight to Plaintiff's contrary assertions in her Declaration.

### B. The Arbitration Agreement is Valid

Applying the Rule 56 standard, the Court must first address the initial prong as to whether there is a valid arbitration agreement. As a preliminary matter, since state contract law principles determine whether a valid arbitration agreement exists, and Plaintiff was employed in New Jersey, New Jersey law governs this issue. *See Bacon*, 959 F.3d at 600. Under New Jersey law, "[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016). Thus, "there must be a meeting of the minds for an agreement to exist before enforcement is considered." *Skuse v. Pfizer, Inc.*, 236 A.3d 939, 949 (N.J. 2020). With respect to determining whether there was a meeting of the minds for an arbitration agreement in the employment context, the New Jersey Supreme Court has stated,

> for any waiver-of-rights provision to be effective, the party who gives up rights must have full knowledge of his legal rights and intent to surrender those rights. When the waiver of rights is an agreement to arbitrate employment disputes, courts require some concrete manifestation of the employee's intent as reflected in the text of the agreement itself. Our jurisprudence has stressed that when a contract contains a waiver of rights—whether in an arbitration or other clause—the waiver must be clearly and unmistakably established. . . . . Our case law thus requires that a waiver-of-rights provision be written clearly and unambiguously. In an employment setting, employees must at least know that they have agree[d] to arbitrate all statutory claims arising out of the employment relationship or its termination.

*Id*. at 949 (citations and quotations omitted).

A review of the Arbitration Agreement shows it plainly meets that standard. It states, in

7

relevant part,

> I and the Compass Related Entities agree to utilize binding individual arbitration as the sole and exclusive means to resolve **all disputes that may arise out of or be related to my employment, including but not limited to the termination of my employment** and my compensation. I and the Compass Related Entities each specifically waive and relinquish our respective rights to bring a claim against the other in a court of law. Both I and the Compass Related Entities agree that **any claim, dispute, and/or controversy that I may have against the Compass Related Entities** (or their owners, parents, subsidiaries, affiliated entities, directors, officers, managers, employees, or agents), or that the Compass Related Entities may have against me, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA") because my employer's business involves interstate commerce.
> . . . .
> **Included within the scope of this Agreement are all disputes, whether based on tort, contract, statute** (including, but not limited to, any claims of discrimination, harassment and/or retaliation, whether they be based on the Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation), equitable law, or otherwise.
> . . . .
> By this binding arbitration provision, I acknowledge and agree that both the Compass Related Entities and **I give up our respective rights to trial by jury of any claim** I or the Compass Related Entities may have against the other.

(Exh. 1, ECF No. 7-2) (emphasis added). It further states,

> **MY SIGNATURE BELOW ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS. I ACKNOWLEDGE THAT I HAVE ALSO RECEIVED A SIGNED COPY OF THIS AGREEMENT FOR MY RECORDS. I FURTHER UNDERSTAND THAT THIS AGREEMENT REQUIRES ME TO ARBITRATE ANY AND ALL DISPUTES THAT ARISE OUT OF MY EMPLOYMENT. DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE AGREEMENT.**

(Exh. 1, ECF No. 7-2) (emphasis in original).

All the issues raised by Plaintiff as reasons that the Arbitration Agreement should not be valid are not persuasive and have been rejected. For example, in *Skuse*, 236 A.3d at 952–953, 955, the New Jersey Supreme Court rejected an employee's arguments that the employer's arbitration agreement was invalid because the employee did not read the agreement, because the agreement

was not explained to the employee before executing it, because the employee did not understand the importance of the execution of the document, or because it was digitally signed and executed in a manner similar to what occurred in this case. *See also Tharpe v. Securitas Sec. Servs. USA, Inc.*, No. 20-13267, 2021 WL 717362, at *2–5 (D.N.J. 2021); *Fernandez v. PrimeLending*, No. 20-00031, 2020 WL 6042119, *3–5 (D.N.J. 2020); *Jasicki v. Morgan Stanley Smith Barney LLC*, No. A-1629-19T1, 2021 WL 162004 (N.J. Super. App. Div. 2021); *Cordero v. Fitness Int'l, LLC*, No. A-1662-20, 2021 WL 5227256 (N.J. Super. App. Div. 2021). Thus, these assertions by the Plaintiff are irrelevant and immaterial under a Rule 56 analysis.[1]

In sum, applying the Rule 56 standard, the Court finds there is no disputed issue of material fact related to the Court's determination as to whether there is a valid arbitration agreement. *Cf. Bacon*, 959 F.3d at 590 (affirming denial of summary judgment on motion to compel arbitration where there were disputed issues of fact as to what parts of the agreement were provided to the parties and the process by which documents were executed).

### C. The Claims Asserted in the Complaint Are Within the Scope of the Agreement

Next, the Court easily concludes that the FMLA and NJLAD discrimination and retaliation claims asserted in the Complaint are within the scope of the Arbitration Agreement. (Exh. 1, ECF No. 7-2 ("**I FURTHER UNDERSTAND THAT THIS AGREEMENT REQUIRES ME TO**

---

[1] For substantially the same reasons, the Court finds Plaintiff's argument that the parties' Arbitration Agreement is unenforceable because an essential term—"arbitration program"—is undefined, (Pla.'s Br., ECF No. 8 at 7–8), is entirely without merit. As Defendant rightly notes, "arbitration program" is not a term of art, but rather a reference to this agreement to arbitrate itself. (Def.'s Reply Br., ECF No. 9 at 3–4). There can be no question that the Agreement's terms convey that all disputes arising out of Plaintiff's employment—whether based on tort, contract, or statute—would be settled through arbitration, rather than in a judicial forum. (Exh. 1, ECF No. 7-2 ("[We] give up our respective rights to trial by jury of any claim[.]")). Accordingly, because the Arbitration Agreement is "sufficiently clear to place [Plaintiff] on notice that . . . she is waiving a constitutional or statutory right," it is plainly enforceable under New Jersey law. *Atalese v. U.S. Legal Servs., L.P.*, 99 A.3d 306, 313–17 (N.J. 2014).

ARBITRATE *ANY AND ALL DISPUTES* THAT ARISE OUT OF MY EMPLOYMENT."

(italics added))).

*****

As such, having found the Arbitration Agreement to be valid and the claims asserted within the scope of the Agreement, the Arbitration Agreement is enforceable.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss and Compel Arbitration—which the Court interprets as a Motion for Summary Judgment, *Guidotti*, 716 F.3d at 776—is **GRANTED**. An appropriate Order will follow.

       */s/ Christine P. O'Hearn*
       **CHRISTINE P. O'HEARN**
       **United States District Judge**